IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS H. FLUHARTY, *Trustee of*
*the Bankruptcy Estate of John*
*Stewart Custom Woodworking, Inc.*,
and JOHN and MARY STEWART,

        Appellants,

v.                   //    CIVIL ACTION NO. 1:17CV136
                           BANKRUPTCY NO. 1:16BK816
                           (Judge Keeley)


BLAKE STEWART and
LINDSEY STEWART,

        Appellees.

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

Thomas H. Fluharty, Trustee of the Bankruptcy Estate of John Stewart Custom Woodworking, Inc. ("Trustee"), and John and Mary Stewart, appeal two orders entered by the United States Bankruptcy Court for the Northern District of West Virginia ("Bankruptcy Court"), denying the Trustee's motion to compromise a certain civil action, and granting Blake and Lindsey Stewart's (the "Homeowners") motion for relief from the automatic stay otherwise applicable to that action.

The primary question presented on appeal is whether the claims asserted by the Homeowners in the underlying state court civil action are property of the bankruptcy estate which can be settled by a compromise offered by the Trustee. Finding that the claims at

**MEMORANDUM OPINION AND ORDER AFFIRMING**
**ORDERS OF THE BANKRUPTCY COURT**

issue are not property of the estate subject to the Trustee's authority to settle, the Court **AFFIRMS** the Bankruptcy Court.

## I. BACKGROUND[1]

### A.    The State Court Proceedings

In June 2016, the Homeowners, Blake and Lindsey Stewart, sued Custom Woodworking Spec. Inc. ("Spec") in the Circuit Court of Monongalia County, West Virginia ("the Civil Action"), seeking approximately $270,000.00 in damages related to the allegedly poor construction of their home. After opposing counsel advised them that Spec was not the appropriate party defendant, the Homeowners amended their complaint to add John Stewart Custom Wordworking, Inc. ("the Debtor") as a defendant. The Civil Action asserts claims against the Debtor for breach of contract, breach of fiduciary duties, and misappropriation of funds paid by them during the construction of their home. The Civil Action was automatically stayed when the Debtor filed a petition for Chapter 7 bankruptcy relief on August 5, 2016 (Dkt. No. 3-4).[2]

---

[1] The facts are drawn from the parties' briefs and the designated record on appeal. The parties do not dispute the factual and procedural history relevant to the pending appeal.

[2] Pursuant to 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition stays the continuation of judicial proceedings against the debtor.

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

Based on information they learned during the initial creditors' meeting on September 14, 2016, the Homeowners moved for leave to file a second amended complaint in the Circuit Court of Monongalia County to add the Debtor's sole shareholders, John and Mary Stewart ("the Shareholders"),[3] as individual defendants under a veil-piercing theory. Concerned that granting the motion to amend would violate the automatic stay, the Circuit Court declined to take any further action in the case absent a ruling from the Bankruptcy Court that the stay did not apply to the Homeowners' claims against the Shareholders. The Homeowners then sought relief from the automatic stay from the Bankruptcy Court (Dkt. No. 3-5).

**B.   The Bankruptcy Proceedings**

During a January 2017 hearing before the Bankruptcy Court on the Homeowners' motion for relief from the stay, the parties initially agreed that claims based on alter ego theories belong first to a Chapter 7 trustee and can be brought by a creditor only if the trustee abandons the claims. See In re Charles Edwards Enterprise, Inc., 344 B.R. 788 (Bankr. N.D.W. Va. 2006). Consequently, the Trustee initiated settlement discussions with the Shareholders.

---

[3] The Homeowners are not related to the Shareholders.

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

Several months later, on May 5, 2017, the Trustee filed a motion to compromise the Civil Action (Dkt. No. 3-9). The terms of the proposed settlement obligated the Shareholders to pay $28,475.00 to the estate to settle the Homeowners' claims. The Homeowners objected to the proposed settlement, however, asserting that the Trustee should abandon the estate's interest, if any, in their veil-piercing claims against the Shareholders (Dkt. No. 3-10). During a hearing on the proposed settlement,[4] the Bankruptcy Court questioned whether the Homeowners' veil-piercing claims actually belong to the bankruptcy estate and can be settled in conjunction with a compromise offered by the Trustee, or whether they fall outside the property of the estate and thus belong exclusively to the Homeowners.

**C.    The Bankruptcy Court Decisions**

On July 20, 2017, the Bankruptcy Court denied the Trustee's motion to compromise and granted the Homeowners' motion for relief from the automatic stay (Dkt. Nos. 3-13; 3-14). In a thoroughly reasoned Memorandum Opinion, it first concluded that, by seeking to compromise the Homeowners' veil-piercing claims, the Trustee sought

---

[4] Pursuant to Fed. R. Bankr. P. 9019, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

### MEMORANDUM OPINION AND ORDER AFFIRMING
### ORDERS OF THE BANKRUPTCY COURT

to settle claims that are not property of the estate and thus are beyond his authority to settle (Dkt. No. 3-2 at 7-9). Having determined that the claims involving veil-piercing properly belong to the Homeowners, the Bankruptcy Court then found good cause to lift the automatic stay, thereby allowing the Homeowners to pursue their veil-piercing claims against the Shareholders in the Circuit Court. Id. at 10-11.

On August 7, 2017, the Trustee and the Shareholders (collectively, "the Appellants") noted their joint appeal from this ruling (Dkt. No. 1). The Homeowners moved to dismiss the appeal on October 17, 2017, based on the Appellants' failure to timely file a brief in support of their appeal (Dkt. No. 7). On October 24, 2017, the Appellants simultaneously moved to file a brief out of time and filed their opening brief (Dkt. Nos. 8;9). The appeal is now fully briefed, and for the reasons that follow, the Court affirms the Bankruptcy Court.

## II. JURISDICTION

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157." 28 U.S.C. § 158(a).

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

### III. STANDARD OF REVIEW

A district court sitting in its capacity as a bankruptcy appellate court reviews "findings of fact only for clear error, but consider[s] the relevant legal questions <u>de novo</u>." <u>In re Varat Enters., Inc.</u>, 81 F.3d 1310, 1314 (4th Cir. 1996). Therefore, when the parties do not dispute the relevant facts, the Court's review is <u>de novo</u>. <u>See</u> <u>In re Jones</u>, 591 F.3d 308, 310 (4th Cir. 2010). A decision to lift the automatic stay, however, is "within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion." <u>In re Robbins</u>, 964 F.2d 342, 345 (4th Cir. 1992), <u>as amended</u> (May 27, 1992) (citing <u>In re Boomgarden</u>, 780 F.2d 657, 660 (7th Cir. 1985).

### IV. DISCUSSION

**A.   The Court declines to dismiss the appeal based on the late filing of the Appellants' brief.**

As an initial matter, the Court must decide whether this case is subject to dismissal based on the Appellants' failure to comply with the Federal Rules of Bankruptcy Procedure. Pursuant to Rule 8018, "unless the district court . . . excuses the filing of briefs or specifies different time limits," a litigant appealing a decision of a bankruptcy court "must serve and file a brief within 30 days after the docketing of notice that the record has been

**MEMORANDUM OPINION AND ORDER AFFIRMING**
**ORDERS OF THE BANKRUPTCY COURT**

transmitted or is available electronically." Fed. R. Bankr. P. 8018(a)(1). If an appellant fails to timely file a brief, "an appellee may move to dismiss the appeal." Fed. R. Bankr. P. 8018(a)(4).

This Court received the designated record on appeal from the Clerk of the Bankruptcy Court on September 12, 2017 (Dkt. No. 3). The Clerk then issued a "Notice of Receipt of Designated Record on Appeal and Bankruptcy Briefing Schedule" on the same day, which required the Appellants to file their opening brief by October 12, 2017 (Dkt. No. 4). On October 17, 2017, after no opening brief had been filed, the Homeowners moved to dismiss the appeal, pursuant to Federal Rule of Bankruptcy Procedure 8018(a)(4) (Dkt. No. 7).

Seven days later, the Appellants filed their opening brief, together with a motion to permit the filing of a brief out of time (Dkt. No. 8). While the Appellants acknowledge that their opening brief was due on October 12, 2017, they state that the "subtlety of the implicit meaning of the transmission of the notice of the record was simply overlooked" and seek permission to file their brief out of time. Id. at 2. The Homeowners oppose the extension and continue to seek dismissal of the appeal (Dkt. No. 10).

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

Under Rule 8018(a)(4), the Court has the discretion to dismiss an appeal if an appellant fails to file a brief on time. Fed. R. Bankr. P. 8018(a)(4). In exercising its discretion, the Court must:

> (1) make a finding of bad faith or negligence; (2) give the appellant notice and an opportunity to explain the delay; (3) consider whether the delay had any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives.

In re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992). In applying this test, the Court must "consider and balance all relevant factors," and "bear in mind that, although dismissal is an option, less drastic alternatives must be considered," because dismissal "is a harsh sanction which . . . must not [be] impose[d] lightly." In re SPR Corp., 45 F.3d 70, 73-74 (4th Cir. 1995) (quoting Serra, 970 F.2d at 1311).

Here, the Appellants promptly responded to the Homeowners' motion to dismiss and provided an explanation for the two-week delay in filing their opening brief. Although the Court's briefing schedule clearly indicated that the brief was due thirty (30) days from September 12, 2017, the Court credits the Appellants' explanation for their late filing. Moreover, the short length of the delay, combined with a lack of bad faith on the part of the

Appellants or any resulting prejudice to the Homeowners, weigh against dismissal in this case.

Accordingly, the Court declines to dismiss the appeal based on the late filing of the Appellants' opening brief, **DENIES** the Homeowners' motion to dismiss (Dkt. No. 7), and **GRANTS** the Appellants' motion to permit the filing of a brief out of time (Dkt. No. 8).

**B.    The Bankruptcy Court did not err by denying the Trustee's motion to compromise the Homeowners' claims.**

Turning next to the merits of this appeal, the Appellants argue that the Bankruptcy Court erred by concluding that the veil-piercing claims against the Shareholders are personal to the Homeowners, and therefore do not belong to the bankruptcy estate of the Debtor. The Appellants contend that these claims are the exclusive property of the bankruptcy estate and thus subject to the Trustee's authority to settle. The central issue on appeal is whether the Bankruptcy Court erred in determining that the Homeowners' veil-piercing claims are not property of the estate. For the reasons that follow, the Court concludes that it did not err.

**1.    Alter Ego Doctrine and Piercing the Corporate Veil**

The filing of a bankruptcy petition creates a bankruptcy estate encompassing "all legal or equitable interests of the debtor

in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property interests in bankruptcy are created and defined by state law, unless federal law requires a different result. See Butner v. United States, 440 U.S. 48, 55 (1979). Thus, "the question of whether a veil-piercing claim is property of the estate—and therefore properly asserted by the trustee—is a matter determined by the source of law giving rise to the veil-piercing claim." In re Cabrini Med. Ctr., 489 B.R. 7, 16 (Bankr. S.D.N.Y. 2012) (citing St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir. 1989)).

Concerning corporations, West Virginia law recognizes that "separately incorporated business are separate entities and that corporations are separate from their shareholders." Syl. Pt. 3, Southern Elec. Supply Co. v. Raleigh County Nat'l Bank, 320 S.E.2d 515 (W. Va. 1984). West Virginia law provides, however, that "[j]ustice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong. However, the corporate form will never be disregarded lightly." Laya v. Erin Homes, Inc., 352 S.E.2d 93, 97 (W. Va. 1986) (quoting Southern States Cooperative, Inc. v. Dailey, 280 S.E.2d 821, 827 (W. Va. 1981) (quotation marks omitted)).

MEMORANDUM OPINION AND ORDER AFFIRMING
ORDERS OF THE BANKRUPTCY COURT

Under West Virginia law, piercing the corporate veil does not constitute an independent cause of action; rather, the alter ego doctrine is an equitable remedy invoked to disregard the corporate entity in order to find the shareholders liable for the debts of the corporation. Therefore, a party seeking to pierce the corporate veil must have a separate cause of action for which it seeks to recover damages from the corporation.

In a case involving an alleged breach of contract, courts normally utilize a two-prong test to pierce the corporate veil and "hold the shareholder(s) actively participating in the operation of the business personally liable for such breach to the party who entered into the contract with the corporation." Syl. Pt. 3, Laya, 352 S.E.2d at 94. First, the "disregard of formalities prong" requires "such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist." Second, the "fairness prong" requires that "an inequitable result would occur if the acts are treated as those of the corporation alone." Id. Indeed, "grossly inadequate capitalization combined with a disregard for corporate formalities, causing basic unfairness, are sufficient to pierce the corporate veil." Id. at Syl. Pt. 5. Thus, under West Virginia law, courts must consider "both the actions of the corporation with

11

respect to corporate formalities and the effect that those actions have on a third-party [sic] seeking to recover from the corporation's shareholders" (Dkt. No. 3-12 at 7).

**2.    Alter Ego Theories as Property of a Bankruptcy Estate**

In In re Charles, the bankruptcy court held that "[a]lter ego theories . . . are the exclusive property of the bankruptcy estate and cannot be pursued by any other party other than the Chapter 7 trustee in the absence of abandonment or grant of derivative standing." 344 B.R. at 790. The Appellants rely on In re Charles for the broad proposition that claims based on alter ego theories, such as those asserted here by the Homeowners, belong first to the Trustee. Other courts, however, have recognized that determining whether veil-piercing claims are property of a bankruptcy estate requires a more nuanced determination of whether those claims accrue individually to the claimant or claimants, or generally to the corporation.

As did the Bankruptcy Court, this Court finds persuasive the reasoning in In re Cabrini Med. Ctr., which explained that

> [a] creditor has standing to bring an alter ego claim
> when the harm alleged in support of the claim is personal
> to them; a creditor lacks standing to bring such a claim
> when the harm alleged is general. See St. Paul Fire and
> Marine Ins. Co., 884 F.2d at 704 ("If . . . the cause of
> action is a general one, and does not accrue to [the
> creditor] individually, [then the creditor] cannot seek
> individual relief outside of the bankruptcy court.").

> <u>Accord</u> <u>Picard v. JP Morgan Chase & Co.</u>, 460 B.R. 84, 96
> (Bankr. S.D.N.Y. 2011) (quoting <u>Koch Refining v. Farmers
> Union Cent. Exchange, Inc.</u>, 831 F.2d 1339, 1349 (7th Cir.
> 1987) ("To determine whether an action accrues
> individually to a claimant or generally to the
> corporation, a court must look to the injury for which
> relief is sought and consider whether it is peculiar and
> personal to the claimant or general and common to the
> corporation and creditors.")).

489 B.R. at 17 (internal quotation marks omitted). In other words,

courts must determine whether the harm alleged in support of a

veil-piercing claim is "peculiar and personal" to the claimant(s)

or "general and common" to the corporation and its creditors.

Consistent with this authority, the Bankruptcy Court held that

"alter ego theories are the exclusive property of the bankruptcy

estate only when the harm incurred is general to all creditors or

when the estate possesses a direct cause of action against a

shareholder." On the other hand, "when the resulting injury is

specific to an individual creditor or group of creditors, . . . the

injured creditor or creditors are the exclusive owners of the claim

even if the claim relies, in part, on a veil-piercing theory" (Dkt.

No. 3-12 at 4). In light of this, the court recognized that it was

tasked with determining whether the Homeowners' claims are "general

to all creditors or specific to them," and that this determination

"requires an analysis of whether the harm [alleged] is peculiar to

the Homeowners or common to all creditors." <u>Id.</u> at 8.

## MEMORANDUM OPINION AND ORDER AFFIRMING
## ORDERS OF THE BANKRUPTCY COURT

This Court agrees with the Bankruptcy Court that a veil-piercing claim becomes the exclusive property of the bankruptcy estate "only when the harm incurred is general to all creditors," and thus remains the property of the claimant "when the resulting injury is specific to" that claimant.

### 3.    Analysis of the Harm Alleged

Given that alter ego claims are the exclusive property of the bankruptcy estate only when the harm incurred is general to all creditors, the Court must next determine whether the harm alleged in support of the Homeowners' veil-piercing claims is "peculiar and personal" to them or "general and common" to the Debtor and its creditors. The Homeowners assert a series of claims related to the allegedly inadequate construction of their home by the Debtor. Relevant here is their attempt to hold the Shareholders liable for their anticipated recovery because the Debtor, through its Shareholders, purportedly failed to maintain corporate formalities and operated a home construction business without adequate capitalization. See Dkt. Nos. 3-5 at 3; 11 at 6.

According to the Appellants, the financial injury asserted by the Homeowners, if proven, would harm "all corporate creditor [sic] and shareholders . . . pro rata" and thus are general and common (Dkt. No. 12 at 7-8). The Homeowners respond that the claims

MEMORANDUM OPINION AND ORDER AFFIRMING
ORDERS OF THE BANKRUPTCY COURT

asserted against the Shareholders in the Civil Action – and the alleged harms that stem from those claims – relate solely to the poor construction of their home and therefore are personal to them (Dkt. No. 11 at 8, 11-12).

Courts recognize that a claim is "personal" to a creditor "[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation...." Picard, 460 B.R. at 89 (quoting Steinberg v. Buczynski, 40 F.3d 890, 892–93 (7th Cir. 1994)). In contrast, a claim is general "if [there is] . . . no particularized injury arising from it, and [it] could be brought by any creditor of the debtor...." St. Paul Fire and Marine Ins. Co., 884 F.2d at 701.

Here, the Homeowners assert claims for misappropriation of funds and breach of fiduciary duties related to their alleged payment of funds to the Debtor for the construction of their home. Based on information contained in the Debtor's Bankruptcy Petition (Dkt. No. 3-4), as well as testimony provided by the Shareholders during the initial meeting of the creditors, the Homeowners allege that the Shareholders paid themselves and others salaries from the funds advanced to the Debtor for their home's construction (Dkt. No. 3-5 at 3-4). Thus, while arguing somewhat generally that the Debtor failed to respect corporate formalities and was grossly

undercapitalized, an assertion potentially available to all creditors, the Homeowners also specifically allege that because the Debtor was undercapitalized, it misappropriated money advanced by the Homeowners *solely* for the construction of their home (Dkt. No. 3-5 at 3-4).

Critically, the Bankruptcy Court recognized that the Homeowners "specifically point to the Debtor's misappropriation of funds directed to [it] for the construction of the Homeowner's [sic] residence as evidence of the Debtor's undercapitalization by asserting that the Debtor needed to misappropriate those funds in order to conduct its ordinary business" (Dkt. No. 3-12 at 8). This Court agrees with the Bankruptcy Court that the purported "connection between the Debtor's alleged gross undercapitalization and the alleged misappropriation of funds paid to the Debtor for construction of the Homeowners' residence demonstrates a injury *particular to* the Homeowners." Id. at 8-9 (emphasis added). Because the specific harm alleged by the Homeowners is different from the general harm suffered by the creditors of the Debtor generally, the veil-piercing claims at issue remain the property of the Homeowners and do not belong to the bankruptcy estate.

Finally, to the extent that the Appellants contend that the Bankruptcy Court should have given deference to the Trustee's

decision to settle the Homeowners' claims because he is entitled to exercise reasonable business judgment (Dkt. No. 12 at 7), this contention is unavailing. As noted by the Bankruptcy Court, although trustees are entitled to exercise business judgment in pursuing and settling causes of action owned by the bankruptcy estate, they are not entitled to deference in determining whether property belongs to the estate. See Dkt. No. 3-12 at 9 n.5. Accordingly, the Bankruptcy Court did not err by declining to accept the Trustee's conclusion that the proposed settlement of the Homeowners' claims involved estate property.

**C.   The Bankruptcy Court did not err by granting the Homeowners' motion for relief from the automatic stay.**

Although the parties devote almost no briefing to the issue on appeal, the Appellants also seek to reverse the Bankruptcy Court's order granting the Homeowners' motion for relief from the automatic stay (Dkt. Nos. 1; 9 at 9). They contend that the Bankruptcy Court's decision constitutes an abuse of discretion.

It is well established that "[a] decision to lift the automatic stay under section 362 of the [Bankruptcy] Code is within the discretion of the bankruptcy judge." In re Robbins, 964 F.2d at 345; see also Claughton v. Mixon, 33 F.3d 4, 5 (4th Cir. 1994) ("Congress . . . has granted broad discretion to bankruptcy courts to lift the automatic stay to permit the enforcement of rights

**MEMORANDUM OPINION AND ORDER AFFIRMING
ORDERS OF THE BANKRUPTCY COURT**

against property of the estate."). According to section 362(d), the bankruptcy court may lift the stay "for cause." <u>See</u> 11 U.S.C. § 362(d)(1).

Because the Bankruptcy Code does not define "cause," courts "must determine when discretionary relief is appropriate on a case-by-case basis". <u>In re Robbins</u>, 964 F.2d at 345 (citing <u>In re Mac Donald</u>, 755 F.2d 715, 717 (9th Cir. 1985)). In exercising their discretion, bankruptcy courts consider the following factors when deciding whether cause exists to lift the automatic stay:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

<u>Id.</u> (citing <u>In re Mac Donald</u>, 755 F.2d at 717; <u>In re Holtkamp</u>, 669 F.2d 505, 508-09 (7th Cir. 1982); <u>In re Revco D.S., Inc.</u>, 99 B.R. 768, 776-77 (N.D. Ohio 1989); <u>In re Pro Football Weekly, Inc.</u>, 60 B.R. 824, 826-27 (N.D. Ill. 1986); <u>Broadhurst v. Steamtronics Corp.</u>, 48 B.R. 801, 802-03 (D. Conn. 1985)).

The Fourth Circuit has instructed that, in considering these factors, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the

18

person seeking relief from the automatic stay if relief is denied."
Id. (citing In re Peterson, 116 B.R. 247, 249 (D. Colo. 1990)). It
has further observed that, "[w]hile Congress intended the automatic
stay to have broad application, the legislative history to section
362 clearly indicates Congress' recognition that the stay should be
lifted in appropriate circumstances." Id.

Here, the Bankruptcy Court analyzed each of the factors from
In re Robbins in determining that cause existed to lift the
automatic stay (Dkt. No. 3-12 at 10-11). First, it found that the
claims asserted by the Homeowners involve only issues of state law
and, therefore, that the expertise of the bankruptcy court is
"unnecessary." Id. Next, it found that lifting the stay would
promote judicial economy as the Civil Action was "already underway"
in Circuit Court, and because the Homeowners sought to proceed
against the Shareholders and not the Debtor. Id. at 11. Finally,
the Bankruptcy Court concluded that the Debtor's estate did not
need protection relating to the Civil Action because the Homeowners
intended to seek damages only from the Shareholders, and the Debtor
would "soon be liquidated and dissolved." Id.

In addition, the Bankruptcy Court applied the appropriate
balancing test by weighing the potential prejudice to the Debtor's
estate against the hardships that would be incurred by the

MEMORANDUM OPINION AND ORDER AFFIRMING
ORDERS OF THE BANKRUPTCY COURT

Homeowners if relief from the automatic stay were denied. While recognizing that the Trustee could be implicated in some discovery in the Civil Action, the court correctly observed that, "the Debtor and its estate will otherwise by undisturbed by the proceeding," and that the bankruptcy estate "will not be subjected to a judgment." Id. It further recognized that, on the other hand, the Homeowners would suffer hardship if the stay were not lifted as the denial of such relief would "unduly delay the[ir] ability to resolve the dispute" with the Shareholders. Id. Finally, the Bankruptcy Court again emphasized that, in the Civil Action, the Homeowners intended to proceed solely against the Shareholders and that no party had moved to extend the automatic stay to the Shareholders.

For these reasons, it is this Court's opinion that the Bankruptcy Court did not abuse its discretion by lifting the automatic stay in this case.

## V. CONCLUSION

In conclusion, for the reasons discussed, the Court:

- **DENIES** the Homeowners' motion to dismiss (Dkt. No. 7);

- **GRANTS** the Appellants' motion to permit the filing of a brief out of time (Dkt. No. 8);

**MEMORANDUM OPINION AND ORDER AFFIRMING
ORDERS OF THE BANKRUPTCY COURT**

- **AFFIRMS** the Bankruptcy Court's orders denying the Trustee's motion to compromise and granting the Homeowners' motion for relief from the automatic stay (Dkt. Nos. 3-13; 3-14); and

- **DENIES as MOOT** the Appellants' motion to stay (Dkt. No. 5).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: September 27, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE